Michael V. Severo, Esq.  (SBN.: 072599)
**THE SEVERO LAW FIRM**
155 N. Lake Avenue, Suite 800
Pasadena, CA 91101-1857
(626)844-6400
msevero@mvslaw.com

Attorneys for Defendant,
TIAN MIN WU

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.  17-CR-00081-PSG |
|---|---|
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO DISMISS INDICTMENT FOR LACK OF LACK OF JURISDICTION BASED ON PRINCIPLES OF DUAL CRIMINALITY; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| TIAN MIN WU | |
| Defendant. | Hearing Date:   March 16, 2020<br>Time:   10 a.m.<br>Courtroom 6A<br>Hon. Philip S. Gutierrez<br>350 West First Street<br>Los Angeles, CA  90012 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO THE UNITED STATES OF AMERICA AND ITS ATTORNEY:**

**PLEASE TAKE NOTICE** that on March 16, 2020, at 10 a.m., or as soon thereafter as counsel may be heard, in Courtroom 6A of the above-entitled court, located at 350 West 1st Street, Los Angeles, CA  90012, the Honorable Philip S. Gutierrez, judge presiding, defendant TIAN MIN WU will, and does hereby, move the court for an order dismissing the Indictment herein.

This motion is made pursuant to the provisions of Federal Rules of Criminal Procedure, Rule 12(b), and upon the grounds that the court lacks jurisdiction over the offenses charged based on principles of dual criminality.

This motion is based upon this notice, the attached memorandum of points and authorities, all files and records in this action, and upon such other oral and documentary evidence as may be adduced at the time of the hearing on this motion.

Dated:  February 21, 2020               THE SEVERO LAW FIRM

                                            By   /s/  *Michael V. Severo*
                                                Michael V. Severo
                                                Attorney for Defendant
                                                TIAN MIN WU

THE SEVERO LAW FIRM
155 N. LAKE AVENUE, SUITE 800 ♦ PASADENA, CA 91101

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 6

    INTRODUCTION ........................................................................................ 6

    EXTRADITION: BACKGROUND AND PROCEEDINGS ........................ 10

    DISCUSSION ............................................................................................. 13

        A.    THE INDICTMENT MUST BE DISMISSED FOR LACK OF JURISDICTION IN THAT THE EXTRADITION VIOLATED THE PRINCIPLE OF DUAL CRIMINALITY .................................................. 13

    CONCLUSION ........................................................................................... 15

# TABLE OF AUTHORITIES

**U.S. COURT OF APPEALS CASES**

*Manta v. Chertoff,* 518 F.3d 1134, 1141 (9th Cir. 2008) ..........................13, 15

*U.S. v. Guo,* 634 F.3d 1119 (9th Cir. 2011) ...............................................14, 15

*U.S. v. Van Cauwenberghe,* 827 F.2d 424 (9th Cir. 1987) ........................... 13

*United States v. Saccoccia,* 18 F.3d 795, 800 n. 6 (9th Cir.1994) ............... 13

**STATUTES**

18 U.S.C. § 1956(a)(2)(A)...................................................................................7

18 U.S.C. § 2....................................................................................................6

18 U.S.C. § 554................................................................................... 6, 10

22 U.S.C. § 2278(b)(2).....................................................................................6

22 U.S.C. § 2278(c).........................................................................................6

22 U.S.C. § 2778..............................................................................................8

28 U.S.C. § 2778(a)(1) ................................................................................. 10

50 U.S.C. § 1705(a) .........................................................................................6

50 U.S.C. § 1705(c) ................................................................................. 6, 15

50 U.S.C. §§ 1701-1707 ..................................................................................9

**RULES**

Fed R. Crim. P. Rule 12(b).............................................................................2

**REGULATIONS**

15 C.F.R. § 730.3..............................................................................................9

15 C.F.R. § 736.2 ...................................................................................................... 6

15 C.F.R. § 738 ......................................................................................................... 6

15 C.F.R. § 764.2 ...................................................................................................... 6

15 C.F.R. § 774 ......................................................................................................... 6

15 C.F.R. §§ 730-774 ................................................................................................ 9

22 C.F.R. § 121.1 ....................................................................................................... 6

22 C.F.R. § 123.1 ...................................................................................................... 6

22 C.F.R. § 127.1(a) .................................................................................................. 6

22 C.F.R. § 127.1(e) .................................................................................................. 6

22 C.F.R. §§ 120-130 ............................................................................................... 8

**THE SEVERO LAW FIRM**
155 N. LAKE AVENUE, SUITE 800 ♦ PASADENA, CA 91101

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

Defendant TIAN MIN WU is a citizen and resident of the People's Republic of China ("PRC"). He is charged in a six count indictment with violations of statutes and regulations pertaining to exports of certain items to the PRC. Specifically, defendant is charged as follows:

- Count One with violating 22 U.S.C. § 2278(b)(2), and 22 U.S.C. § 2278(c). Count One incorporates provisions of the Code of Federal Regulations ("C.F.R.") , to wit Sections 121.1 (the "Munitions List"), 123.1 ("requirements for export licenses"), 127.1(a) (violations to export without a license), 127.1(e) (nonexistent), and 18 U.S.C. § 2 aiding and abetting. This count charges defendant with activities related to exporting a "Decoder," defined as a defense article in Category XI of the Munitions List, without having obtained a license. It incorporates factual allegations 1 through 8, as set forth below. The interplay of these different code sections and regulations is addressed below.

- Count Two with violating 50 U.S.C. § 1705(a), and 50 U.S.C. § 1705(c), prohibiting violations of licensing regulations or orders. This count incorporates 15 C.F.R. § 736.2 and § 764.2, as well as Parts 738 and 774, all aimed at defining violations of licensing statutes and regulations. This count alleges that defendant "knowingly and willfully *solicited* the export of, or attempted export" of a Modem without first obtaining a license.

- Counts Three and Four with violating 18 U.S.C. § 554, a prohibition against smuggling in or out of the United States any merchandise or article subject to regulation, or dealing in such merchandise or article prior to exportation which is regulated by statute or regulation. Count Three names the Decoder as the specific item of merchandise

that is the cause of the violation. Count Four names the Modem as the article subject to regulation. Both counts include the allegation that the violation relates to defendant Wu's failure to obtain a license to export the items.

- Counts Five and Six charge defendant with money laundering in violation of 18 U.S.C. § 1956(a)(2)(A). In that regard, the Indictment alleges in Count Five that defendant made payment of $15,200 on March 1, 2014, and Count Six avers the sum of $11,980 was paid on November 14, 2016, each for the purpose of purchasing, smuggling, and illegally exporting controlled items without first obtaining licenses.

In every instance alleged, the indictment acknowledges that defendant dealt with an undercover agent and that the payments made were made to that undercover agent.

He was arrested in Greece where he spent approximately 14 months before he was extradited to the Central District of California where he remains in custody.

The introductory allegations in the Indictment, as pertinent to the issues presented herein, state as follows:

  1.  Defendant TIAN MIN WU also known as ("aka") "Bob Wu" aka "David Wu" aka "Graham Sones" aka "Edward Wang" ("WU") was located in the People's Republic of China ("PRC") and involved in the import and export business. Between on or about June 2013 through on or about February 10, 2017, defendant WU communicated with undercover law enforcement agents located in Los Angeles County and elsewhere. Defendant WU communicated with

the undercover law enforcement agents in person and by telephone, email, and other means for the purpose of purchasing and illegally exporting from the United States defense articles and items subject to the Commerce Control List ("CCL") without an export license.

2. U.S. Company #1 was a communications and signals intelligence company, providing data collection, analysis, and decoding services and products. U.S. Company #1 manufactured and sold a decoder (the "Decoder"). The Decoder was used for military communication signals collection, analysis, classification, and decoding.

3. U.S. Company #2 was a provider of satellite broadband and wireless services, infrastructure, and technology. U.S. Company #2 manufactured and sold a satellite modem (the "Modem") that could be used for strategic military communications.

4. The Arms Export Control Act, Title 22, United States Code, Section 2778 ("AECA"), authorized the President of the United States to control the export of defense articles by designating those items which shall be considered as defense articles and by promulgating regulations for the import and export of such articles.

5. The AECA and its attendant regulations, the International Traffic in Arms Regulation, Title 22, Code of Federal Regulations, Parts 120-130 ("ITAR"), required a person to apply for and obtain and export license from the Directorate of Defense Trade Controls for the Department of State

("DDTC") before exporting defense articles from the United States.

6. Defense articles were subject to such licensing requirements were designated on the United States Munitions List ("USML"). Those designations were made by the United States Department of State with the concurrence of the United States Department of Defense.

7. Category XI of the USML includes military electronics and software specifically designed for intelligence purposes.

8. The Decoder was a defense article as defined by Category XI of the USML. Prior to export from the United States, WU was required to obtain an export license from the DDTC. At no time did WU apply for, receive, or possess a license to export the Decoder from the United States.

9. The International Emergency Powers Act, Title 50, United States Code, Sections 1701-1707 ("IEEPA"), authorized the President of the United States to deal with unusual and extraordinary threats to the national security, foreign policy, or economy of the United States.

10. The Export Administration Regulations, Title 15, Code of Federal Regulations, Parts 730-774 (the "EAR"), were promulgated under the authority of IEEPA by the Department of Commerce and remained in effect.

11. The EAR regulated the export of "dual-use" items, which are items that have both commercial application and a military or strategic use. 15 C.F.R. § 730.3. The EAR limited the export of goods and technology that could enhance the military or nuclear proliferation of other nations and that

12. could be detrimental to the foreign policy or national security of the United States.

12. The EAR prohibited the export of certain goods and commodities to specific countries, absent permission in the form of an export license issued by the Department of Commerce. The EAR set forth a list of items subject to export restrictions known as the Commerce Control List ("CCL") that categorized goods controlled for export by Export Control Classification Number ("ECCN").

13. The Modem was a dual-use commercial good controlled by the CCL under ECCN 5A002.A1 for anti-terrorism and national security reasons. Where the end user of the Modem was the government of the PRC, an export license issued by the Department of Commerce was required before the Modem could lawfully be exported from the United States. At no time did WU apply for, receive, or possess a license to export the Modem from the United States.

**EXTRADITION: BACKGROUND AND PROCEEDINGS**

The government first sought the aid of the Greek authorities on January 13, 2017 in a request for assistance in the investigation of defendant in anticipation of a meeting in Athens between Mr. Wu and undercover agents ("the Investigation Request"). A true and correct copy of the Investigation Request is attached hereto as Exhibit A. Mr. Wu was lured to Athens with a pretext that the agents would have the Decoder available to show it to defendant. In the Investigation Request, the government states that Mr. Wu's alleged "attempt to acquire the Decoder was in violation of U.S. law, specifically 28 U.S.C. § 2778(a)(1) [sic] and 18 U.S.C. § 554 (Smuggling goods from the United States)." Exhibit A, p. 5. No reference to comparable Greek penal violations are made in this request.

On January 25, 2017, the government sent "The Central Authority of the Hellenic Republic" a "Supplement to Request for Assistance in The Investigation of Tian Min Wu" ("The Investigation Supplement"). A true and correct copy of the Investigation Supplement is attached as Exhibit B.

On January 27, 2017, the government sent to the Greek Ministry of Justice a "Request to Greece for the Provisional Arrest With a View Toward Extradition of Tian Min Wu" (The Request for Arrest"). A true and correct copy of the Request for Arrest is attached hereto as Exhibit C. The Request for Arrest includes mention of the filing of a criminal complaint against defendant in case number SA17-13M, filed on January 27, 2017. Once again, no mention of how the alleged actions of defendant constitute a crime in Greece is made in the Request for Arrest.

On or about February 15, 2017, Assistant U.S. Attorney Mark Takla submitted an affidavit sworn before Magistrate Judge Jay C. Ghandi in support of the government's request for defendant's extradition. Exhibit D. Also submitted on the same date and for the same purpose is the affidavit of the Department of Homeland Security Special Agent Jeremy Ding. Exhibit E. Neither affidavit references Greek law counterparts to the charges indicted in this district.

On March 27, 2017, AUSA Takla provided an additional affidavit and provided witness statements. A true and correct copy of the affidavit is attached as Exhibit F.

On May 31, 2017, the Greek court found the evidence submitted to be insufficient to grant extradition and continued proceedings for three months. Exhibit G.

On September 19, 2017, AUSA Takla submitted a supplemental affidavit in support of the extradition request and appended 15 exhibits. The affidavit without exhibits is attached hereto as Exhibit H. In this

submission, the government emphasizes to the Greek court that it has charged Mr. Wu with "soliciting" another to break the law and attempt to violate the law of the U.S.

On October 25, 2017, the Greek court issued an opinion in favor of extradition.[1]

On March 16, 2018, the Ministry of Justice ordered Mr. Wu extradited to the United States. Exhibit J. In its extradition order, the government of Greece states as follows: "for the offenses of 'illegal commissioning and attempt to export, without a license, defense articles included in the US munitions list,' 'illegal commissioning and attempt to export, without a license, dual-use articles included in the commerce control list,' 'smuggling of defense articles and dual-use articles from the US in violation of laws and regulations, and the attempt to commit such act" (2 times), and 'laundering of money by transporting funds to the USA with the intent to promote illegal activity….' under the condition that the aforementioned will not be prosecuted, tried or held in the country to which he is being extradited for the execution of a penalty or security measure, nor be subjected to any limitation of his personal freedom, nor be surrendered to a third country for other punishable acts committed before his extradition, other than the one for which his extradition was requested and is ordered with this decision."

Defendant was thereafter transported to this district to face prosecution under the current indictment.

///
///

---

[1] Defendant has made a request to the government to produce a transcript of this hearing. As of this writing, this item has not been produced. Therefore, defendant leaves space for later production of Exhibit "I."

# DISCUSSION

## A. THE INDICTMENT MUST BE DISMISSED FOR LACK OF JURISDICTION IN THAT THE EXTRADITION VIOLATED THE PRINCIPLE OF DUAL CRIMINALITY

The United States' right to demand and obtain extradition of an accused criminal is conferred by its treaty with Greece ("the Treaty"). See *U.S. v. Van Cauwenberghe,* 827 F.2d 424 (9th Cir. 1987). The Treaty was originally signed in 1931, and amended by Protocols on September 2, 1937 and January 2006. A copy of the Treaty and the 2006 Protocol are attached hereto as Exhibit K.

Dual criminality requires that an accused be extradited only if the alleged criminal conduct is considered criminal under the laws of both the surrendering and requesting nations." *United States v. Saccoccia,* 18 F.3d 795, 800 n. 6 (9th Cir.1994).

Article I of the Treaty between the United States and Greece provides for the "dual criminality" requirement. It provides that "surrender shall take place only upon such evidence of criminality, as *according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed.*" Treaty of Extradition Between the United States of America and the Hellenic Republic, U.S.-Greece, May 6, 1931, 47 Stat. 2185 (Italics added). "In other words, an offense is not extraditable under the Treaty unless it is considered criminal under the laws of both Greece and the United States." *Manta v. Chertoff,* 518 F.3d 1134, 1141 (9th Cir. 2008).

"Dual criminality exists if the 'essential character' of the acts criminalized by the laws of each country are the same and the laws are substantially analogous. *Id.* at 1141. Thus, it is not required that the

elements of the crime alleged to have been committed in Greece be identical to crimes in the U.S. *Id.* at 1141.

Here, nothing in the U.S. government's requests nor the Greek court's or Ministry of Justice decisions make a colorable attempt to define those portions of the Greek Penal Code that parallel – even if in general terms – the provisions upon which Mr. Wu has been charged in this district.

The "essential character" of the charges in this case is the exporting or attempted exporting of listed items that are controlled and may not be exported without a license from the U.S. government. As certified for extradition, Mr. Wu could only be charged with the "attempted export" of such items and money laundering. See Exhibit J.

The basic elements of the attempt to export offense – the only offense for which Mr. Wu was extradited, other than money laundering – appear to be as follows:

a. Defendant attempted to export a controlled item from the United States to China;
b. Defendant *knew* that the export of the controlled item required an export license. (See *U.S. v. Guo,* 634 F.3d 1119 (9th Cir. 2011));
c. Defendant took a substantial step toward exporting the item without a license;
d. Defendant acted willfully in attempting to export the item without obtaining a license.

Article 1 of the Treaty defines extraditable offenses. Paragraph A.3. provides that, "For purposes of this Article, a crime or offense shall be considered an extraditable crime or offense: … (c) in criminal cases relating to …the import or export of commodities, regardless of whether the laws of the requesting and requested countries provide for the same kind of … controls on the import or export of the same kind of commodities."

14

Defendant contends that, at a minimum, Greek law must address the unlicensed exportation of military items, though as noted above not necessarily the same kind of items or the same kind of control protocol. Nothing in any of the decisions of the Greek courts or the Ministry of Justice refers the reader to any law in Greece that controls exports at all.

It is also of note that in order to meet the "dual criminality" standard, the law of Greece must provide for the intent element in committing crimes. *Manta v. Chertoff*, supra, at 1142. In *U.S. v. Guo*, supra, the court acknowledged the *scienter* requirement in 50 U.S.C. § 1705(c). This same measure of intent must be present in Greek law in order for the dual criminality requirement to be satisfied.

Thus, there must be a showing that, "the laws of both the requesting and the requested party appear to be directed to the same basic evil...." Here, the unlicensed exportation of military items must be proscribed in Greece, as it is in the United States.

Accordingly, in addition to other grounds previously stated, Counts One through Four must be dismissed.

## CONCLUSION

For all the foregoing reasons and such other grounds as may be adduced at the hearing on this motion, defendant respectfully requests that the motion be granted, the indictment dismissed and the defendant discharged.

Dated:  February 21, 2020        THE SEVERO LAW FIRM

By   /s/ *Michael V. Severo*
     Michael V. Severo
     Attorney for Defendant
     TIAN MIN WU