# EXHIBIT A



**U.S. Department of Justice**

*Criminal Division*
*Office of International Affairs*

*Washington, D.C. 20530*

January 13, 2017

To: The Central Authority of the Hellenic Republic

Re: <u>Request for Assistance in the Investigation of Tian Min Wu</u>

The Central Authority of the United States respectfully requests the assistance of the appropriate Hellenic authorities pursuant to the 1999 U.S.-Greece Mutual Legal Assistance Treaty ("the Treaty"), as supplemented by the 2006 U.S.-Greece Mutual Legal Assistance Protocol. The United States Attorney's Office for the Central District of California (the "Prosecutor") and the United States Department of Homeland Security, Homeland Security Investigations ("HSI") (collectively, "U.S. Authorities") have been engaged in an ongoing investigation of Tian Min Wu ("Wu") and his transnational criminal organization for violations of U.S. laws. Specifically, the investigation is based on Wu's attempts to export military and dual-use military articles from the U.S. The Prosecutor opened a formal investigation of Wu and his organization in 2014.

To further this investigation, the U.S. Authorities seek assistance in connection with a planned undercover operation involving Wu in early February 2017 within the jurisdiction of Greece. The requested assistance includes assistance in connection with conducting audio and video recording of a planned meeting.[1] In addition, U.S. Authorities intend to separately provide the appropriate Greek authorities with a request for the provisional arrest of Wu while he is in

---

[1] Based on prior contact with Wu, U.S. Authorities believe it is possible, though not likely, that Wu may bring one or more associates or coconspirators with him to the proposed meeting. Regardless of whether Wu is alone or with others, U.S. Authorities requests assistance with respect to conducting and recording the meeting.

Greece. Following any arrest, the U.S. authorities request assistance in (1) obtaining all audio or video recordings made during the undercover meeting if not already in the possession of U.S. Authorities; (2) obtaining any records generated, or items recovered, in connection Wu's arrest by Greek authorities or any searches incident to such arrest; and (3) obtaining all border crossing, immigration, and travel records relating to Wu's trip to Greece. Lastly, if Wu is arrested pursuant to the provisional arrest request, U.S. Authorities further request assistance in connection with obtaining a voluntary, recorded, post-arrest interview of Wu and obtaining copies of any recordings made in connection with such interview.

## REQUEST FOR EXPEDITED EXECUTION

The proposed undercover meeting currently is set to place in Athens during the first week of February 2017. Please, therefore, expedite the consideration of this request. If this request is granted, U.S. Authorities will need to coordinate logistics with Greek law enforcement authorities and schedule the necessary travel prior to the first week of February 2017.

## REQUEST FOR CONFIDENTIALITY

Because all of the suspects involved in this investigation have not yet been identified and because Wu is not aware of the proposed undercover operation outlined herein, the U.S. Authorities respectfully ask that this request be kept confidential in all respects and that this request, including the contents, subject matter, or the fact that the request has been made, not be disclosed or shared with any private persons (including the subjects of the investigation), or any government officials whose knowledge is not necessary for purposes of executing this request. In addition, please advise all who must be made aware of this request for assistance that the request, its contents, and its subject matter are to be kept confidential and should not be shared except as described above. In order to avoid disclosure to third parties, please ensure that this mutual legal assistance request is NOT placed in any Ministry of Justice criminal dossier without

the express authorization of the United States. Instead, please place this request for assistance in a separate mutual legal assistance dossier.

## THE FACTS

In June 2013, a U.S. company received a suspicious email inquiry through its commercial Internet website with regard to the purchase of a type of specialized electronic equipment known as a "high gain antenna." It later was determined that the inquiry had come from Wu. Soon thereafter, the U.S. company contacted U.S. law enforcement authorities to report the suspicious request because (i) the product mentioned in the email was of a type that requires an official license to export it from the United States and (ii) Wu claimed in the email message to be a part of a trading company located in the People's Republic of China (the "PRC").

The initial information provided by Wu indicated that he was attempting to acquire sensitive military equipment ("high gain antenna") on behalf of a for profit organization (trading company), which suggested the involvement of coconspirators. Due to the nature of this information, HSI agents began a preliminary investigation as whether this request was a legitimate or illegal attempt to purchase and export this product. In connection with the investigation, a HSI undercover agent ("UC1") sent unsolicited email messages to Wu stating that s/he was a broker who assisted customers in seeking aviation and military parts. In subsequent communications UC1, Wu stated that he wanted to purchase different U.S. origin products such as the high gain antenna signals intelligence decoder (the "Decoder") and several other items with potential military applications.

Each of these items were subject to U.S. export control laws. In particular, the Decoder is used in various communication systems, including signal intelligence, communications intelligence systems, and direction finding systems. The Decoder is designed to collect, record, categorize and decode intelligence and then store and forward the collected intelligence from any

3

manned or unmanned systems or remote vehicles. The Decoder is on the United States Munitions List and has been designated by the United States government as significant military equipment. The Decoder is prohibited for export to foreign companies or entities without the permission of the United States government.

In later communications, Wu stated that the true end user of the products he was requesting would be the "Shanghai Changjiang Shipping Corp." UC1 told Wu that the high gain antenna and the Decoder were products controlled under U.S. export laws and that, prior to any export of these items from the U.S., an export license would have to be obtained from the U.S. Department of State. UC1 further stated that s/he believed that it would be impossible for Wu to purchase the items directly from the manufacturer and to obtain an export license because of the legal prohibition on exporting these military related items to the PRC. As a means of evaluating whether Wu was willing to try to pursue an illegal export of these items, UC1 represented that s/he could help Wu buy and export these controlled products, but claimed that s/he would have to charge a 25% "risk" fee due to the risks associated with exporting the items without a license.

In January 2014, Wu sent an email message to UC1 asking for a price quotation for the Decoder. Over the next two months, UC1 and Wu exchanged a number of email messages discussing matters relating to product cost and payment arrangements. During these communications, Wu told UC1 to ship the Decoder to his coconspirator, who he later described as "trusted," at an address different from his. In March 2014, Wu sent UC1 two payments in the amounts of $10,000 and $5,200. As part of an investigative technique to determine whether Wu was willing to try and evade U.S. export control laws, in April 2014, UC1 sent Wu an email message stating that the items had been seized by U.S. Customs and Border Protection ("CBP") agents and that CBP agents were asking for a copy of the valid export license. UC1 stated that if Wu wanted a replacement purchase, Wu would have to meet UC1 in person to discuss delivery

options that might avoid further CBP seizures. Wu agreed to meet UC1 in Bangkok, Thailand for this purpose.

In late April 2014, UC1 told Wu that the UC1's partner, another HSI undercover agent ("UC2"), was available to meet with Wu. In May 2014, UC2 met Wu at the Marriott Hotel in Bangkok, Thailand. During the meeting, Wu acknowledged that the Decoder was controlled for export from the U.S. and that UC1 would be charging a 25% "risk fee" to compensate for the risk of exporting the item from the U.S. to the PRC without the necessary export license. Wu asked for a second order of the Decoder and stated he would pay when the software was delivered.

Wu's attempt to acquire the Decoder was in violation of U.S. law, specifically U.S.C. § 2778(a)(1) (Arms Export Control Act) and 18 U.S.C. § 554 (Smuggling Goods from the United States). Additionally, Wu violated 18 U.S.C. §1956(a)(2)(A) (Laundering of Monetary Instruments) when he sent UC1 payment for the Decoder. Wu's attempt to acquire the Decoder and resulting violation of U.S. law are the underlying factors for his arrest and will be the basis for a Provisional Arrest Warrant Request to be sent separate from this request for assistance.

In December 2014, Wu sent an email message asking if UC1 could procure a satellite modem. The modem discussed was a dual-use item with military applications and, as such, was controlled for export by the U.S. Department of Commerce and required an export a license. The satellite modem was also covered under the Wassenaar Arrangement on Export Controls for Conventional Arms and Dual-Use Goods and Technologies, of which Greece is a participating Member. UC1 identified eight other modems which did not require an export license. Wu declined stating that "we" were not interested in purchasing these products (which could be purchased and exported legally to the PRC). Wu stated that he, instead, wanted to procure the specific satellite modem he requested and did not want to try and obtain the required U.S. export licenses.

5

On March 8, 2016, Wu sent an email message to UC1 stating that he wanted to purchase additional U.S.-origin products. Wu stated that he and his customer would inspect the products upon arriving in the PRC. On March 14, 2016, UC1 informed Wu, that due to the U.S. arms embargo of the PRC, it would be difficult to ship anything to the PRC without heavy scrutiny. On March 14, 2016, Wu emailed the UC1 about procuring dual-use strategic communication modems (the "Modems"), which products are controlled under U.S. export laws with regard to the PRC.

On June 9, 2016, Wu met UC1 in Bangkok to discuss a potential transaction involving the Modems and other export controlled commodities. During the meeting, Wu told UC1 about his end users and suggested that they knew that the requested products were prohibited for export from the U.S. UC1 explained that the products Wu had requested could not legally be sold to him because he was purchasing them for a prohibited end user and UC1. Because of this, UC1 advised Wu to be very careful. Also during the meeting, Wu agreed to meet UC1 in a European country (to be determined later) in order to take delivery of the Modems. On November 14, 2016, Wu wired $11,980 to the U.S. from Hong Kong in payment for the purchase and export of the Modems.

Throughout his interactions with UC1 and UC2, Wu made reference to two for profit business entities, a "trading company" that he is employed with and the "Shanghai Changjiang Shipping Corp." Additionally, he continually made reference to the involvement of other individuals, utilizing the pronoun "we" on several occasions, also using terms such as "end users" and "customers," as well as specifically alluding to the existence of a "trusted" coconspirator. The interactions and statements of Wu indicate that he is working with others to illegally acquire sensitive military equipment for the benefit of yet other involved individuals or entities, that he is doing so for financial gain, and that these activities have occurred in several countries and in disregard of international boundaries. It is currently believed that Wu is part of

a transnational criminal organization of three or more individuals including end users and customers who are aware of the prohibited nature of the requested products. It is also believed that Wu is engaging in this conduct for profit.

Based on Wu's recent communications with UC1, it is anticipated that Wu will travel from the PRC to Greece during the first week of February 2017, in order to meet with the UC1 to take possession of the Modems. In addition, Wu has stated that he wants his coconspirator to meet UC1 in Greece. If the meeting takes place as proposed, the U.S. Authorities seek assistance in secretly recording the meeting and will request that Greek authorities arrest Wu at the conclusion of the meeting pursuant to a Provisional Arrest Warrant Request that will be sent separately and prior to the meeting.

## THE OFFENSES

### Title 22, United States Code Section, 2778: Arms Export Control Act

(b)(1)(A)(ii)

(I) As prescribed in regulations issued under this section, every person (other than an officer or employee of the United States Government acting in official capacity) who engages in the business of brokering activities with respect to the manufacture, export, import, or transfer of any defense article or defense service designated by the President under subsection (a)(1) of this section, or in the business of brokering activities with respect to the manufacture, export, import, or transfer of any foreign defense article or defense service (as defined in subclause (IV)), shall register with the United States Government agency charged with the administration of this section, and shall pay a registration fee which shall be prescribed by such regulations.

(II) Such brokering activities shall include the financing, transportation, freight forwarding, or taking of any other action that facilitates the manufacture, export, or import of a defense article or defense service.

(III) No person may engage in the business of brokering activities as described in subclause (I) without a license, issued in accordance with this chapter. . . .

\*\*\*

(c) Criminal violations; punishment

Any person who willfully violates any provision of this section . . . or any rule or regulation issued under this section . . . shall upon conviction be fined for each violation not more than $1,000,000 or imprisoned not more than 20 years, or both.

**Title 18, United States Code, Section 554: Smuggling of Goods from the United States**

(a) In General. - Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both.

**Title 18, United States Code Section, 1956: Laundering of Monetary Instruments**

(a)(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—

    (A) with the intent to promote the carrying on of specific unlawful activity;
\*\*\*

(c)(7) the term "specified unlawful activity" means—
\*\*\*

    (D) an offense under . . . section 38 (c) (relating to criminal violations) of the Arms Export Control Act. . . .[2]

### SUBJECT OF REQUEST

| | |
|---|---|
| Name: | Tian Min Wu |
| Aliases: | Bob Wu/David Wu |
| Date of Birth: | April 27, 1965 |
| Place of Birth: | PRC |
| Citizenship: | PRC |

### ASSISTANCE REQUESTED

**Meetings and Surveillance of Targets of Investigation**

U.S. authorities seek assistance in allowing one or more HSI agents acting in an undercover capacity to conduct one or more undercover meetings with Wu in or near Athens, Greece during the first week in February 2017. The U.S. authorities also request assistance with making audio and video recordings of the meetings between Wu, the undercover agent (UCA), and any of Wu's associates or coconspirators. Additionally, should Greek law enforcement

---

[2] The provision formally enacted as Section 38(c) of the Arms Export Control Act is now codified as Title 22, United States Code, Section 2778(c), which is set forth above.

8

2278

authorities assist in the surveillance or recordings of these meetings, U.S. authorities ask that they provide access to, and duplicates of:

(1) Any and all surveillance video and audio recordings of Wu created by Greek law enforcement authorities related to any undercover meetings that involve the aforementioned HSI undercover agents; and

(2) Copies of all records, notes, forms, and other documentation Greek authorities generate as a result of the meetings between Wu and the undercover agents.

**Arrest of UCA and Target**

Should Greek authorities arrest Wu pursuant to a U.S. request for his provisional arrest, U.S. authorities also request that Greek authorities conduct a mock arrest of the UCA, simultaneous to Wu's arrest and in Wu's presence, and transport the UCA away from the scene separately from Wu.

**Post-Arrest Interview of Target**

After the arrest of Wu, U.S. authorities request assistance in the conducting of a voluntary post-arrest interview of Wu, in accordance with Greek domestic laws. Alternatively, please conduct a voluntary post-arrest interview of Wu and ask Wu the questions attached to this request as Exhibit A. U.S. authorities request that the Greek authorities record, via audio and video recording devices, or permit U.S. Authorities in Greece to record, any voluntary post-arrest interview of Wu.

**Search Incident to Arrest and Post-Arrest Search of Wu's Temporary Residence**

Please conduct searches of Wu's person and hotel room at the time of arrest and seize any items that related to Wu's criminal activity. Specifically, and in accordance with Greek law, please seize the following:

1. Any and all personal electronic devices belonging to or used by Wu, including, but not limited to: (a) cellular/mobile phones, (b) computers or tablets, (c) digital cameras, and (d) electronic storage media;

2. Any and all records appearing to relate to transfer or export of military goods, technology, or services from the United States to other countries;

3. Any and all records describing or referencing financial or banking transactions associated with the suspected transfer or export of military goods, technology, or services from the United States to other countries;

4. Any and all records pertaining to the purchase for resale of goods or technology by Wu or any associated companies or subsidiaries;

5. Any and all records identifying the business contacts and customers of Wu or any associated companies or subsidiaries, including materials reflecting customer lists, customer contact information, and customer addresses;

6. Any and all records identifying businesses owned or operated by Wu, either foreign or domestic;

7. Any and all records identifying companies or subsidiaries associated with Wu's export activities;

8. Any and all records identifying means of communication (i.e., telephone numbers, e-mail accounts, social media accounts, secure messaging applications, and other electronic accounts) used by Wu or his business associates in the transfer or export of goods, technology, or services from the United States to other countries;

9. Any and all records listing or describing military goods, technology, or services requested to be obtained from the United States for use in other countries;

10. Any and all records identifying or referencing the engagement of any United States person or foreign national in the transfer or export of military goods, technology, or services from the United States to other countries;

11. Any and all records relating to the export, re-export, trans-shipment, brokering, procurement, solicitation, sale (including any negotiation of terms in advance of any potential or actual sale), supply, financing, transportation, freight forwarding, and/or acquisition of any military goods, technology, or services;

12. Any and all records relating to the Decoder, encryption and decryption software, and satellite modems;

13. Any and all records reflecting knowledge or awareness of export-control laws, regulations, or restrictions, either generally or in relation to the items described above in paragraph D(12); and

14. Any and all passports or other identification documents associated with Wu, or other records identifying Wu.

**Booking, Border Crossing, Immigration and Travel Records**

Please provide any and all personal identifying information obtained during the post-arrest booking of Wu, including the following: (1) full first and last name, (2) date of birth, (3) citizenship, (4) proof of residency, (5) inked fingerprints, and (6) booking photographs.

Additionally, please provide any border crossing, immigration, and travel records associated with Wu and any identified associates and/or co-conspirators, including a copy of any visa applications and passports used to enter Greece, if available.

## PROCEDURES REQUESTED

### Meeting and Surveillance of Target of Investigation

For each set of records and recordings generated by Greek law enforcement authorities, please ask the appropriate custodian of records to complete the attached Certification of Official Records (Form C, enclosed).

### Post-Arrest Interview of Wu

U.S. authorities request certified (Form C, enclosed) copies of all recordings, records, notes, forms, and other documentation Greek authorities generate as a result of the possible voluntary post-arrest interview of Wu.

### Search Incident to Arrest and Post-Arrest Search

U.S. authorities also request that the appropriate Greek authorities complete a Certification with Respect to Seized Items (Form E, enclosed) and permit U.S. authorities to take possession of any items seized from Wu or his hotel room pursuant to this request (or permit U.S. authorities to conduct the searches). Specifically, with respect to electronic devices and media seized from Wu's person or possession and from his temporary residence, U.S. authorities request assistance in imaging those devices and media while in Greece, and to take possession of the images as well as the devices and media.

U.S. authorities also request that the appropriate custodian of records (1) provide copies of all records, notes, forms, and other documentation generated by Greek authorities or developed as a result of any search incident to arrest and post-arrest search, and then (2) complete, and sign the Certification of Official Records (Form C, enclosed).

### Post-Arrest Booking Information and Immigration and Travel Records

Please have the appropriate custodian of records (1) provide duplicates of the requested booking and immigration records pertaining to Wu and/or any co-conspirators who may

accompany him and then (2) complete and sign the Certification of Official Records (Form C, enclosed).

## CONTACT INFORMATION

Lukas Danambasis, Director of Greece's Financial and Economic Crime Unit ("SDOE"), is aware of this investigation and has agreed to serve as a point of contact for purposes of executing this request. Mr. Danambasis can be contacted at telephone number 0030-210-698-1642. The coordination of the general execution of this request may be conducted with the assistance of Leanne Fallin, Attorney, Office of International Affairs, who may be reached at +1 202-305-1124 or by email at *leanne.fallin@usdoj.gov*. Within the office of the HSI Attaché in Athens, this matter is assigned to Special Agent Christopher Johnson, HSI—International Operations, who may be reached at 0030-210-720-2406 or by e-mail at *christopher.a.johnson@ice.dhs.gov*.

## CONCLUSION

The U.S. Department of Justice thanks the Hellenic Republic for its attention to this request and for any assistance that it may be able to render in this matter.

*[signature]*

Jason E. Carter
Acting Deputy Director
Office of International Affairs
Criminal Division

# FORM C

## CERTIFICATION OF OFFICIAL RECORDS

I, _____ [NAME], attest on penalty of criminal punishment for false statement or attestation that:

1. _____ [NAME OF OFFICE OR AGENCY] is a government office or agency of the Hellenic Republic and is authorized by law to maintain official records setting forth matters authorized by law to be reported and recorded or filed;

2. My position with the above-named public authority is

_____ [OFFICIAL TITLE];

3. In my official capacity I have caused the production of true and accurate copies of records maintained by that public authority; and

4. Those copies are described below and attached.

Description of Documents: _____

_____

_____

_____

_____

_____ (SIGNATURE)

_____ (DATE)

(Official Seal)

**FORM E**

**CERTIFICATION WITH RESPECT TO SEIZED ITEMS**

I, _____ [NAME], attest on penalty of criminal punishment for false statement or attestation that:

1. My position with the Government of the Hellenic Republic is _____ [OFFICIAL TITLE].

2. I received custody of the items listed below from _____ [NAME OF PERSON] on _____ [DATE], at _____ [PLACE]; and

3. I relinquished custody of the items listed below to _____ [NAME OF PERSON] on _____ [DATE], at _____ [PLACE] in the same condition as when I received them (or, if different, as noted below).

Description of Articles: _____

_____

_____

_____

_____

Changes in condition while in my custody: _____

_____

_____ (DATE OF EXECUTION)

_____ (PLACE OF EXECUTION)

_____ (SIGNATURE)

(Official Seal)

15

2285

# EXHIBIT A

## QUESTIONS TO ASK SUBJECT BY ARRESTING OFFICERS

1. In which country do you maintain citizenship and/or residency?

2. For what purpose did you travel to Greece?

3. Where are you employed?

4. Do you own or operate any businesses?

    a. In which countries?

    b. What are the names of the businesses?

    c. What is the nature of these businesses?

    d. Who are your primary customers (for this product)? If the government, what branch?

5. What is your understanding and/or knowledge of international shipping laws, regulations, and procedures?

6. In the past year, what is your estimation (in U.S. dollars) of sales you have brokered or otherwise been engaged in?

7. Which electronic communications methods, including email accounts, do you use to communicate with business associates, clients, or partners?

    a. Regarding any named email accounts, do any other individuals use them?

    b. What other methods do you use to communicate?

    c. Do you use Skype? If so, what is your username(s)?

    d. Do you use WIckr? If so, what is your username(s)?

    e. Do you use CoverMe? If so, what is your username(s)?

    f. Do you use Telegram? If so, what is your username(s)?

    g. Do you use MyChat? If so, what is your username(s)?

    h. Do you use WeChat? If so, what is your username(s)?

    i. Do you use WhatsApp? If so, what is your username(s)?

8. Do you know, or are you aware, of any individuals engaged in any criminal activity in violation of any country's laws or regulations?

9. Prior to this arrest, have you ever been arrested?

10. Why do you think you have been arrested on this occasion?

11. What is your understanding and/or knowledge of U.S. export laws and regulations?

12. What is your understanding and/or knowledge of the licensing process with the U.S. government?

13. What is your understanding of the U.S. International Traffic in Arms Regulation ("ITAR")?

14. What is your understanding and/or knowledge of U.S. and/or international sanctions, including arms embargoes?

15. In which country(s) do you maintain financial accounts?

16. Are you aware of any individuals or organizations involved in unlawful weapons procurement or smuggling activities?

17. Are you aware of any individuals or organizations involved in unlawful technology procurement operations?

18. Are you currently in the middle of, brokering, or otherwise engaged in any current transactions regarding weapons, ammunition, or export-controlled technology?

19. Are you aware of any individuals or organizations involved in money laundering activities?

20. Are you aware of any individuals or organizations involved in smuggling activities or operations?

21. Are you interested in cooperating with the U.S. government officials, including U.S. law enforcement officers regarding the pending charges against you?

22. Are you interested in waiving your right to an extradition hearing related to your current arrest?

23. Are you interested in waiving your right to an identity hearing related to your current arrest?



## ManpowerGroup Public Sector

6400 Arlington Boulevard, Third Floor, Falls Church, Virginia 22042  Tel. (703) 245-9400  Fax. (703) 245-9401
www.manpowergroup.com

### CERTIFICATE OF TRANSLATION

I <u>Eleftheria Frances</u>, certify that I am competent to translate this document, and that the translation is true and accurate, to the best of my abilities. All archival seals, stamps, and certifications have been translated here.

English Title:        Wu MLAT to Greece

Greek Title:          Wu MLAT to Greece

I certify under penalty of perjury, pursuant to 28 U.S.C. 1746, that the attached translation is true and correct.

Executed this __19th__ day of __January__ 2017.

_____
Signature

2288